DISTRICT OF OREGON
**F I L E D**
February 07, 2012
**Clerk, U.S. Bankruptcy Court**

Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | |
| ) | Bankruptcy Case |
| Lauren John Paulson, ) | No. 09-32439-rld7 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| Lauren John Paulson, ) | Adv. Proc. No. 11-03309-rld |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Matt Arbaugh, Amy Mitchell, and ) | MEMORANDUM DECISION RE (1) MOTION |
| Craig Russillo, ) | TO RECUSE AND (2) PLAINTIFF'S |
| ) | MOTION FOR A VISITING OUT OF |
| Defendants. ) | DISTRICT JUDGE |
| _____ ) | |

On December 8, 2011, the Clerk's office received a letter dated December 7, 2011, from Plaintiff, Lauren John Paulson, addressed to me, which I directed be docketed in this adversary proceeding as a motion to recuse ("Recusal Motion"). On February 2, 2012, Mr. Paulson filed "Plaintiff's Motion for A Visiting Out of District Judge" ("Visiting

Page 1 - MEMORANDUM DECISION RE (1) MOTION TO RECUSE AND (2) PLAINTIFF'S
         MOTION FOR A VISITING OUT OF DISTRICT JUDGE

Judge Motion"). For the reasons set forth in the discussion below, I will deny the Recusal Motion and the Visiting Judge Motion.

**Background Facts.**

Mr. Paulson, as the sole and managing member of Huber-Wheeler Crossing, LLC (the "LLC"), signed documents through which the LLC borrowed funds (the "Loan") from Fairway Commercial Mortgage Corporation ("Fairway"). Fairway was the predecessor-in-interest of FHLF, LLC ("FHLF"). Defendant Craig Russillo was the attorney for both Fairway and FHLF.

The Loan was secured by three parcels of real property owned by the LLC, and by a fourth parcel of real property owned by the Lauren Paulson Trust (collectively, the "Property"). "All of the documentation for the Loan identifies the Loan as a commercial loan and identifies the LLC as the borrower." Memorandum, Paulson v. Mitchell (In re Paulson), BAP No. OR-10-1173-MkHJu at 2:20-21 (9th Cir. BAP May 10, 2011).

In February 2008, the LLC default on payments due under the Loan. Following unsuccessful efforts both to renegotiate the Loan and to sell the Property, Fairway formally demanded cure of the Loan default. In response, Mr. Paulson commenced litigation against Fairway in the United States District Court for the District of Oregon, Case No. CV-08-00982-ST, which has been referred to as the Predatory Lending Lawsuit. In March 2009, Fairway filed a Civil Rule 12(b)(6)[1] motion to dismiss

---

[1] Unless otherwise specified, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-
(continued...)

Page 2 - MEMORANDUM DECISION RE (1) MOTION TO RECUSE AND (2) PLAINTIFF'S MOTION FOR A VISITING OUT OF DISTRICT JUDGE

most of the claims for relief in the Predatory Lending Lawsuit. Fairway also began actively to pursue foreclosure proceedings.

Mr. Paulson filed a voluntary chapter 11 case on April 8, 2009, and the case was assigned to me. Defendant Matt Arbaugh was Mr. Paulson's attorney of record. Through Mr. Arbaugh, Mr. Paulson entered into a stipulated order with Fairway, which allowed Mr. Paulson until September 14, 2009 to sell the Property. In the absence of a sale by that date, Fairway could resume its foreclosure proceedings. When Mr. Paulson failed to sell the Property by September 14, 2009, Fairway completed its nonjudicial foreclosure through a credit bid on the Property on September 25, 2009.

On November 25, 2009, on Mr. Paulson's motion, I converted his bankruptcy case from chapter 11 to chapter 7. Defendant Amy Mitchell was appointed as the chapter 7 trustee in the case.

In January 2010, I granted FHLF relief from the automatic stay to pursue a state court forcible entry and detainer action ("FED Action") for possession of the Property. Alleging wrongful foreclosure of the Property, Mr. Paulson filed a response to FHLF's motion, but neither he nor Mr. Arbaugh appeared at the hearing on FHLF's motion held December 29, 2009. At that hearing, I explained that any issues Mr. Paulson had relating to wrongful foreclosure could be raised in the FED Action.

On February 25, 2010, Ms. Mitchell filed a motion for authority to settle Mr. Paulson's Predatory Lending Lawsuit with Fairway in

---

[1](...continued)
9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Page 3 - MEMORANDUM DECISION RE (1) MOTION TO RECUSE AND (2) PLAINTIFF'S MOTION FOR A VISITING OUT OF DISTRICT JUDGE

exchange for Fairway's payment of $5,000 to Mr. Paulson's bankruptcy estate, which I granted over Mr. Paulson's objection, following an evidentiary hearing held May 7, 2010. Mr. Arbaugh then requested permission to withdraw as Mr. Paulson's counsel in the bankruptcy case, which I also granted. Acting pro se, Mr. Paulson appealed my order approving the settlement to the Bankruptcy Appellate Panel ("BAP"), which affirmed. A copy of the BAP's decision and its judgment of affirmance were received by the Clerk of the Bankruptcy Court on May 31, 2011, and docketed in Mr. Paulson's chapter 7 case as Docket No. 123 on June 1, 2011. Mr. Paulson's appeal of the BAP's decision to the Ninth Circuit Court of Appeals was dismissed August 16, 2011 based upon Mr. Paulson's failure to pay the docketing/filing fees in his appeal to the Ninth Circuit. See Docket Nos. 124 and 125 in Mr. Paulson's chapter 7 bankruptcy case.

On September 19, 2011, Mr. Paulson sued Mr. Arbaugh, Mr. Russillo, and Ms. Mitchell in the Multnomah County Circuit Court, Case No. 1109-12166. In essence, the state court litigation alleges malpractice against Mr. Arbaugh, a civil conspiracy between and among all defendants to obtain legal title to Mr. Paulson's property by unlawful means, and a claim for punitive damages based upon the defendants' alleged intentional infliction of emotional distress on Mr. Paulson. Mr. Arbaugh and Mr. Russillo filed a notice of removal, to which Ms. Mitchell consented, thereby initiating this adversary proceeding, on the basis that Mr. Paulson's claims for relief arose from his bankruptcy case. I scheduled a status hearing/pre-trial conference ("November 29

Pre-Trial Conference") to discuss the appropriate way to proceed in the adversary proceeding.

At the November 29 Pre-Trial Conference, having reviewed the complaint and the defendants' answers, I identified the claims for relief that appeared to involve issues of law rather than issues of fact, and invited summary judgment motions from the defendants on those issues.

### The Recusal Motion and the Visiting Judge Motion

Following the November 29 Pre-Trial Conference, Mr. Paulson filed the Recusal Motion. While Mr. Paulson alleges generally that I have "demonstrated such a high degree of favoritism and antagonism as to make fair judgment by [me] impossible,"[2] his specific allegations of bias relate to (1) having stated on the record that Mr. Paulson had an "empty head," and (2) providing legal advice to the defendants' attorneys at the November 29 Pre-Trial Conference.

In the Visiting Judge Motion, Mr. Paulson asserts he cannot get a fair hearing from any sitting judge, state or federal, within the State of Oregon,[3] including me. Mr. Paulson again asserts, only by broad

---

[2] The language quoted both by Mr. Paulson and above is found in Liteky v. United States, 510 U.S. 540, 555 (1994). The example used by the Supreme Court of a statement that reveals such a high degree of antagonism as to make fair judgment impossible was that made by a district judge in a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty." Id. (internal citations omitted).

[3] The Visiting Judge Motion refers to Mr. Paulson's concerns about my impartiality only in paragraphs 1, 5 and 6. I set out the exact assertions below:

(continued...)

Page 5 - MEMORANDUM DECISION RE (1) MOTION TO RECUSE AND (2) PLAINTIFF'S MOTION FOR A VISITING OUT OF DISTRICT JUDGE

general statements, that I am "so prejudiced against [him] as to make fair adjudication and due process impossible," and that I am "guilty of gross judicial misconduct which renders [me] unable to afford [him] a fair hearing or trial on any issue."

28 U.S.C. § 455 provides:

> (a) Any . . . judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

With respect to whether my impartiality might reasonably be questioned in this adversary proceeding, Mr. Paulson's argument appears

---

[3](...continued)
1. The Oregon Judge Randall Dunn is so prejudiced against the Plaintiff as to make fair adjudication and due process impossible. Witness [the Recusal Motion] attached hereto and incorporated herein as though fully set forth herein.

. . .

5. . . . Interestingly, Judge Randall Dunn also refused to engage in any settlement overtures whatsoever EVEN THOUGH THE PARTIES HAD SETTLED THE CASE AT ONE POINT IN THE UNDERLYING PROCEEDINGS WHILE THE BANKRUPTCY CHAPTER 11 WAS PENDING. The Plaintiff has pointed out that that position is against Oregon law as enunciated in ORS 36.100 et seq.

6. Paulson alleges that . . . Judge Randall Dunn [is] guilty of gross judicial misconduct which renders [him] unable to afford the Plaintiff a fair hearing or trial on any issue.

(Emphasis in original).

Page 6 -  MEMORANDUM DECISION RE (1) MOTION TO RECUSE AND (2) PLAINTIFF'S
          MOTION FOR A VISITING OUT OF DISTRICT JUDGE

to be my rulings against him in matters in his underlying bankruptcy case in themselves reflect my lack of impartiality toward him.  However, the mere fact that Mr. Paulson does not like my prior decisions on the merits of issues before me in his case, which were affirmed on appeal, is not sufficient reasonably to question my impartiality.  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion . . . Almost invariably, they are proper grounds for appeal, not for recusal."  <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994) (internal citation omitted).  Thus, I find no basis to disqualify myself under 28 U.S.C. § 455(a).

Turning to 28 U.S.C. § 455(b)(1), I next address Mr. Paulson's assertions that certain of my statements and actions reflect a personal bias against him.

### "Pure Heart, Empty Head"

The colloquy to which Mr. Paulson refers is in the transcript of the May 7, 2010 hearing on Ms. Mitchell's motion for authority to settle Mr. Paulson's Predatory Lending Lawsuit with Fairway.  One critical issue in that dispute was whether Mr. Paulson, individually, could prevail in the Predatory Lending Lawsuit where the loans appeared to be business loans with the loan documents having been executed by Mr. Paulson on behalf of his business entities rather than for himself.

> THE COURT:  Now, you may want to just correct something in relation to the record, or at least explain it because, Mr. Paulson, you've just said you signed the loan agreement as an individual, yet the loan agreement reflects your signature as Lauren Paulson, managing member of Huber Wheeler Crossing, LLC.
>
> THE WITNESS:  Could I see what –

Page 7 - MEMORANDUM DECISION RE (1) MOTION TO RECUSE AND (2) PLAINTIFF'S
         MOTION FOR A VISITING OUT OF DISTRICT JUDGE

| | |
|---|---|
| 1 | THE COURT: That's Exhibit 102. It should be in front of you. . . . So take a look at Exhibit 102, page 7. |
| 2 | |
| 3 | THE WITNESS: Right. What I meant, Your Honor, is that I didn't put, like, manager after the signature. That's what I meant. |
| 4 | THE COURT: But it's there. |
| 5 | THE WITNESS: Yeah. |
| 6 | THE COURT: Lauren Paulson, Managing Member. Now, as a former member of the bar, I would assume that you would have some awareness that LLCs are basically operated by their managing members or by a manager. So that if you sign the agreement as the managing member of Huber Wheeler Crossing, LLC, on what basis would you believe you were signing as an individual? |
| 7 | |
| 8 | |
| 9 | |
| 10 | THE WITNESS: That the basis was that when we first – keep in mind that before I signed these documents, I never met with more – talked with anybody at Fairway. I had no idea who they were or what these transactions were about. All this was arranged by my mortgage broker, who's named in the lawsuit. |
| 11 | |
| 12 | |
| 13 | THE COURT: **So your defense in the federal litigation is going to be pure heart, empty head** even though you were are a lawyer? |

Tr. of May 7, 2010 H'ring at 25:9-26:17 (emphasis added). See Docket No. 120 in Mr. Paulson's chapter 7 bankruptcy case.

The phrase "pure heart, empty head" is a legal term of art that refers to a defense of subjective, as opposed to objective, "good faith." In essence, it means that a defendant is arguing "I meant well and did not know better," as a means of excusing acts or behavior which might otherwise lead to legal culpability. The phrase appears throughout reported case law. It is not a personal comment on someone's mental capability, only her alleged lack of knowledge that a particular action could implicate a legal consequence. As such, it cannot be considered a basis to establish bias.

/ / /

Page 8 - MEMORANDUM DECISION RE (1) MOTION TO RECUSE AND (2) PLAINTIFF'S MOTION FOR A VISITING OUT OF DISTRICT JUDGE

Further, Mr. Paulson previously argued bias from this colloquy to the BAP in his appeal of the order authorizing the settlement of the Predatory Lending Litigation. In considering Mr. Paulson's argument that my "pure heart, empty head" comment reflected bias, the BAP stated "[w]e fail to perceive how the court's characterization of Paulson's litigation position constituted any evidence of bias." BAP Memorandum at 19:16-18.

### Identification of Summary Judgment Issues

Contrary to Mr. Paulson's assertion that I inappropriately provided legal advice and strategy to defendants' counsel in how to proceed in the case, in identifying issues appropriate for summary judgment I was fulfilling my obligation to manage the adversary proceeding toward a "just, speedy and inexpensive" resolution.

> [T]he judicial role is not a passive one . . . it is the duty of the judge . . . to step in at any stage of the litigation where intervention is necessary in the interests of justice. Learned Hand wrote, "a judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty he cannot discharge by remaining inert."

Alvin B. Rubin, <u>The Managed Calendar: Some Pragmatic Suggestions About Achieving the Just, Speedy and Inexpensive Determination of Civil Cases in Federal Courts</u>, 4 Just. Sys. J. 136 (1978).

Civil Rule 16 provides the mechanism for judicial case management. Rule 7016 is entitled "Pre-Trial Procedure: Formulating Issues," and it expressly incorporates Civil Rule 16 with respect to adversary proceedings in bankruptcy. Civil Rule 16(a) explains that the purposes of a pre-trial conference include, inter alia, "(1) expediting disposition of the action; (2) establishing early and continuing control

so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities. . . ." To that end, Civil Rule 16(c)(2) identifies as appropriate for my action as a trial judge: "(A) formulating and simplifying the issues, and eliminating frivolous claims or defenses; . . . [and] (E) determining the appropriateness and timing of summary adjudication under Rule 56. . . ."

What transpired at the November 29 Pre-Trial Conference was consistent with the scope of my authority as provided in Civil Rule 16. See Tr. of November 29, 2011 Pre-Trial Conference (Docket No. 21 in the adversary proceeding). Acting within the scope of my mandate to manage litigation before me cannot in itself constitute bias.

<u>Alleged Gross Judicial Misconduct</u>

Mr. Paulson has not articulated any action I have taken, apart from my judicial rulings against him, which constitute "gross judicial misconduct." The Visiting Judge Motion appears to suggest that, in part, it is my "refusal" to engage in any settlement overtures which supports the allegation of gross judicial misconduct. However, I am not a party to these proceedings to whom settlement overtures can be made.

Mr. Paulson has filed a complaint of misconduct with the Ninth Circuit Court of Appeals. It is the Ninth Circuit which must determine whether I have engaged in gross judicial misconduct. Accordingly, the issue of gross judicial misconduct on my part in not appropriate for my review. With respect to allegations of bias or misconduct included the Visiting Judge Motion which relate to other judges, those matters are not properly before me. I therefore deny the Visiting Judge Motion, without

Page 10 - MEMORANDUM DECISION RE (1) MOTION TO RECUSE AND (2) PLAINTIFF'S
         MOTION FOR A VISITING OUT OF DISTRICT JUDGE

prejudice to Mr. Paulson's ability to assert bias or misconduct in any other forum.

## Conclusion.

The Recusal Motion does not establish bias to require my recusal from presiding over the adversary proceeding.

Because the allegations contained in the Visiting Judge Motion are not appropriate for my review, I deny the Visiting Judge Motion without prejudice to Mr. Paulson's ability to assert alleged judicial misconduct in any other appropriate forum.

I will enter separate orders denying the Recusal Motion and the Visiting Judge Motion.

cc: Lauren John Paulson
Paul A.C. Berg
Susan K. Eggum
Justin D. Leonard
Matt Arbaugh
Amy Mitchell
Craig Russillo